OPINION
{¶ 1} Defendant-appellant, Dante Hill, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery with firearm specification and robbery.
 {¶ 2} According to the state's evidence, on the afternoon of August 28, 2006, while Joshua Vidor was making repairs to rental property that he owned on Bassett Avenue in Franklin County, Ohio, defendant and another person, Dejuan Glover, approached him and robbed him at gunpoint. After robbing Mr. Vidor, defendant and Glover drove away in Mr. Vidor's vehicle. During the early morning hours of the next day, *Page 2 
defendant and Glover were apprehended after a police officer in Sheffield Lake, Ohio, discovered them asleep in Mr. Vidor's vehicle with two firearms that later were determined to be similar to the weapons used in the robbery.
 {¶ 3} By indictment filed on October 26, 2006, defendant was charged with one count of aggravated robbery with firearm specification, and two counts of robbery, each with a firearm specification.[1] Defendant pled not guilty to these charges and demanded a jury trial.
 {¶ 4} At trial, after the state presented its evidence, defendant moved for acquittal pursuant to Crim. R. 29. The trial court denied this motion. Defendant did not testify on his own behalf and did not present any witnesses.
 {¶ 5} After deliberating, a jury delivered a verdict finding defendant guilty of aggravated robbery with firearm specification, a violation of R.C. 2911.01, and felony of the first degree; and robbery, a violation of R.C. 2911.02(A)(2), and a felony of the second degree. At the sentencing hearing, defendant again moved for acquittal pursuant to Crim. R. 29. Denying this motion for acquittal, the trial court imposed a seven-year prison term for defendant's conviction for aggravated robbery and a three-year prison term for defendant's conviction for the firearm specification. The trial court ordered the sentences to be served consecutively with each other. For purposes of sentencing, the trial court merged the sentence for defendant's robbery conviction with defendant's sentence for aggravated robbery with firearm specification. *Page 3 
 {¶ 6} From the trial court's judgment, defendant appeals and advances three assignments of error for our consideration:
 First Assignment of Error: The evidence was legally insufficient to support appellant's convictions for Aggravated Robbery and Robbery.
 Second Assignment of Error: The Court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 {¶ 7} After the matter was submitted to this court, defendant moved for leave to file a supplemental brief, which this court granted. See, generally, App. R. 16(C). In this supplemental brief, defendant raises another assignment of error:
 Fourth Assignment of Error: Appellant's due process rights, constitutional right to grand jury indictment and to notice of all the essential elements for which he was charged were violated by the state's failure to include a mens rea element into the counts for which he was convicted.
 {¶ 8} We shall begin by considering defendant's fourth assignment of error.
 {¶ 9} By his fourth assignment of error, relying on State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), on reconsideration, State v. Colon ("Colon II"), ___ Ohio St.3d ___,2008-Ohio-3749, defendant asserts that he was deprived of due process rights because the indictment against him fails to contain notice of all the essential elements of the crimes for which he was convicted.
 {¶ 10} In Colon I, the Supreme Court of Ohio considered this question: "`Where an indictment fails to charge the mens rea element of the crime, and the defendant fails to raise that issue in the trial court, has the defendant waived the defect in the indictment?'" *Page 4 
Id. at ¶ 1. Answering in the negative, the Supreme Court concluded that the defendant did not waive the defect in the indictment.
 {¶ 11} In a single-count indictment, Vincent Colon was charged with robbery, a violation of R.C. 2911.02(A)(2), as follows: "`[I]n attempting or committing a theft offense, as defined in Section 2913.01
of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim].'" Id. at ¶ 2. At trial, when the court instructed the jury, the court summarized the elements of robbery under R.C. 2911.02(A)(2) as: "(1) `in attempting or committing a theft offense or in fleeing immediately after the attempt or offense,' (2) the defendant inflicted, or attempted to `inflict, or threatened to inflict physical harm upon [the victim].'" Id. at ¶ 3. The jury ultimately convicted Colon of robbery in violation of R.C. 2911.02(A)(2). Id.
 {¶ 12} Finding that the indictment against Colon was defective because it failed to charge that physical harm was recklessly inflicted, see id. at ¶ 10, 14, the Supreme Court of Ohio explained that "R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of `[i]nflicting, attempting] to inflict, or threatening] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm." Id. at ¶ 14; see, also, id. at ¶ 13, quoting State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, at ¶ 21 (explaining that "`recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is irrelevant'"). *Page 5 
 {¶ 13} Recognizing that the matter before it could be decided by applying a plain-error analysis, the Colon I court nonetheless found that the defects in the indictment led to significant errors throughout the defendant's trial, and, therefore, structural-error analysis was appropriate. Id. at ¶ 23; see, also, id. at ¶ 20 (discussing structural error).
 {¶ 14} Finding that (1) the indictment failed to meet constitutional requirements because it failed to include the mens rea of the crime of robbery, id. at ¶ 28-29; (2) there was no evidence that the defendant had notice that the state was required to prove that defendant had been reckless in order to convict him of the crime of robbery, id. at ¶ 30; (3) the state did not argue that defendant's conduct in inflicting physical harm on the victim constituted reckless conduct, id. at ¶ 30; (4) the trial court failed to include the required mens rea in its instructions to the jury regarding the crime of robbery, id. at ¶ 31; (5) there was no evidence that the jury considered whether defendant had been reckless in inflicting, attempting to inflict, or threatening to inflict physical harm, as required under R.C. 2911.02(A)(2), and (6) during closing arguments, the prosecuting attorney treated robbery as a strict-liability offense, id. at ¶ 31, [2] the Colon I court concluded:
 In summary, the defective indictment in this case failed to charge all the essential elements of the offense of robbery and resulted in a lack of notice to the defendant of the mens rea required to commit the offense. This defect clearly permeated the defendant's entire criminal proceeding. The defendant did not receive a constitutional indictment or trial, and therefore the defective indictment in this case resulted in structural error. *Page 6 
Id. at ¶ 32. See, also, Colon II, at ¶ 6.[3]
 {¶ 15} Concluding that its holding, which provides that a defendant could challenge for the first time on appeal an indictment that omitted an essential element of a crime, protects a defendant's right to a grand jury indictment, id. at ¶ 39, the Colon I court rejected: (1) the state's arguments that Crim. R. 12(C) required objections based on defects in an indictment to be raised before trial, id. at ¶ 33-38; and (2) the state's claim that permitting defendants to challenge a defective indictment for the first time on appeal would encourage defendants to withhold their challenges until after trial, thereby resulting in inefficient proceedings. Id. at ¶ 41.
 {¶ 16} The Colon I court further stated:
 Applying Crim. R. 7(B) to this case, since the language of R.C. 2911.02(A)(2) does not include the mental element required to commit the offense, the indictment was required to be in "words sufficient to give the defendant notice of all the elements." Further, pursuant to State v. O'Brien [(1987), 30 Ohio St.3d 122], the defendant's indictment was required to include the term "recklessly" in order to properly charge the offense. It is not an unreasonable burden to require counsel for the state to ensure that the defendant receives the benefit of his fundamental constitutional protections, nor is it unreasonable to expect a trial judge to properly instruct the *Page 7 
jury regarding all the elements of the crime with which the defendant is charged.
 A defendant has a constitutional right to grand jury indictment and to notice of all the essential elements of an offense with which he is charged. The state must meet its duty to properly indict a defendant, and we will not excuse the state's error at the cost of a defendant's longstanding constitutional right to a proper indictment. When a defective indictment so permeates a defendant's trial such that the trial court cannot reliably serve its function as a vehicle for determination of guilt or innocence, the defective indictment will be held to be structural error. See State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17.
Id. at ¶ 43-44.
 {¶ 17} Accordingly, the Colon I court "[held] that when an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at ¶ 45; see, also, id. at syllabus.
 {¶ 18} Applying Colon I's holding to this case, even though in the trial court defendant failed to preserve his claim that the indictment against him was constitutionally defective, defendant's failure to preserve this claim of error does not preclude him from raising his claim of error here for the first time. Id. at ¶ 45; syllabus.
 {¶ 19} Finding that defendant is not precluded from raising a claim that the indictment against him was constitutionally defective, we must now consider whether the allegedly defective indictment so permeated defendant's trial such that the trial court could not reliably have served its function as vehicle for determining defendant's guilt or innocence. See, e.g., id. at ¶ 44. *Page 8 
 {¶ 20} Here, in its indictment against defendant and his co-defendant, as to the charge of robbery under R.C. 2911.02(A)(2), the grand jury charged: "[I]n violation of section 2911.02 of the Ohio Revised Code, in attempting or committing a theft offense in respect to Joshua Vidor, or in fleeing immediately after the attempt or offense, did have a deadly weapon on or about their person or under their control, and/or inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 21} As was the situation in Colon I, here the indictment failed to charge that physical harm was recklessly inflicted by defendant. And, as was the case in Colon I, with respect to the charge of robbery under R.C. 2911.02(A)(2), the indictment is constitutionally defective because it fails to include all the elements of the charge of robbery.
 {¶ 22} We further find that the trial court's instructions to the jury also were flawed. Here, following the presentation of evidence, the parties reviewed proposed jury instructions with the court. (Tr. Vol. I, at 143-150.) During this review of proposed jury instructions, the state made the following requests:
 MR. WODARCYK [Assistant Prosecuting Attorney]: I would also ask, Your Honor, that would I be proceeding on for purposes of argument on Count Two [robbery charge], would be did threaten to inflict harm on another. In other words, I'm eliminating the language about did have a deadly weapon. Because I think that just mirrors what's in the aggravated robbery definition.
 THE COURT: All right.
 MR. WODARCYK: So I'm just going to argue to this jury that this a F-2 robbery because you threatened to inflict physical harm on him.
 THE COURT: Okay. *Page 9 
 MR. WODARCYK: So I'm eliminating the deadly weapon language.
 THE COURT: Did inflict, attempt to inflict or threaten to inflict physical harm on another, Joshua Vidor. All right.
 MR. WODARCYK: Yes. I would just say did. In respect to Joshua Vidor, I would just say did threaten to inflict. That's all. Just did threaten to inflict.
 THE COURT: Okay.
 MR. WODARCYK: Based on that change, I'd be asking for a dismissal as to the firearm spec at the bottom of that page.
 THE COURT: That would naturally and logically follow.
 MR. WODARCYK: So no firearm spec on Count Two.
 * * *
 THE COURT: Okay.
 MR. WODARCYK: Okay. At the bottom of page six and the top of page seven, Your Honor, is the F-3 version of robbery.
 THE COURT: Yes.
 MR. WODARCYK: Which I don't believe needs to go back to this jury at all. Because this was either done with a gun or this was done with a threat of physical harm and I don't believe there's any dispute about that.
 THE COURT: So you're basically asking for a dismissal as to Count Three —
 MR. WODARCYK: Right.
 THE COURT: — in regards to both defendants.
 MR. WODARCYK: I guess I'm then moving to dismiss the F-3 version of robbery which talks about threat or use of force or using of force. *Page 10 
 THE COURT: All right. I take it there's no objection from the defense?
 MR. CHURCHILL [On Behalf of Defendant]: No, sir.
 MR. HALLEY [On Behalf of Co-Defendant Glover]:
No.
 THE COURT: All right.
Id. at 147-149.
 {¶ 23} The trial court thereafter instructed the jury as follows with respect to the robbery charge:
 Now, before you can find the defendant under consideration guilty of robbery, you must find beyond a reasonable doubt that on or about the 28th day of August, 2006, and in Franklin County, Ohio, that the individual defendant, that is, the defendant under consideration, in committing a theft offense in respect to Joshua Vidor, did threaten to inflict physical harm on Joshua Vidor.
 Now, I've already defined knowingly, purposely and theft offense, and of course those definitions apply equally here.
 Physical harm. I used the phrase did threaten to inflict physical harm on another. Physical harm to persons means any injury, illness or other physiological or bodily impairment regardless of its gravity or its duration. If you find that the State of Ohio has proven beyond a reasonable doubt — excuse me. If you find that the State of Ohio has proven as to the defendant under consideration all of the elements of robbery beyond a reasonable doubt, your verdict must be guilty as to that offense in regard to that defendant. If you find that the State of Ohio has failed to prove any one element of the offense of robbery as to the defendant under consideration, then your verdict must be not guilty as to that offense.
Id. at 188-189. (See, also, written jury instructions.)
 {¶ 24} Here, as was the case in Colon I, the trial court failed to include the necessary mens rea of recklessly for the offense of robbery under R.C. 2911.02(A)(2). *Page 11 
Furthermore, as was the situation in Colon I, there is no evidence whether the jury considered whether defendant was reckless in threatening to inflict physical harm to the victim.
 {¶ 25} Finally, during closing arguments, as to the offense of robbery, the assistant prosecuting attorney failed to make any reference to the requisite mens rea of "recklessly" and treated robbery as a strict-liability offense. During closing arguments, as to the offense of robbery, the assistant prosecuting attorney stated in part:
 * * * You're going to be given an instruction on a secondary crime. Remember, we are talking one robbery here. This wasn't two different incidents. We are talking one thing. But as so many of you know already there are things called lesser offenses. This is robbery. We call it robbery. * * *
 Again, we are saying that these defendants did it. We know that's in dispute. But other than that, it's in committing a theft offense that the defendants threatened to inflict physical harm. So once again we have like a mathematical equation. Do we have a theft? Of course we do. Combined with the threat to inflict physical harm, the pointing of what's presumably a gun, the comments about we are going to shoot you or should we shoot him. Those, ladies and gentlemen, I think common sense will dictate are threats of physical harm. You combine that threat with threat of physical harm and that equals the crime of robbery.
 * * *
 * * * But I suggest to you based on these legal instructions, if you find that they, one or more of them are guilty of the crime of aggravated robbery then I submit to you, I've also proven this lesser offense which is Count Two, which is robbery. You can't have that without this.
(Tr. 156-158.) *Page 12 
 {¶ 26} Finding that the facts of this case are plainly similar to and substantially indistinguishable from those in Colon I, we therefore conclude that Colon I, as reconsidered in Colon II, applies to defendant's robbery conviction, and we further conclude the defective indictment so permeated defendant's trial such that the trial court could not reliably have served its function as vehicle for determining defendant's guilt or innocence. Accordingly, defendant's conviction for robbery under R.C. 2911.02(A)(2) cannot stand.[4]
 {¶ 27} Although the state concedes that Colon I applies to defendant's robbery conviction, the state claims that defendant suffered no prejudice from a Colon I error because defendant's robbery conviction merged with defendant's conviction for aggravated robbery. See, e.g., R.C. 2941.25; State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, at paragraph one of the syllabus, clarifying State v. Rance (1999),85 Ohio St.3d 632; State v. Madaris, Hamilton App. No. C-070287, 2008-Ohio-2470, at ¶ 36 (holding that crimes of aggravated robbery and robbery under R.C. 2911.02[A] are allied *Page 13 
offenses of similar import and, under the facts of that case, the defendant's conduct involved a single animus and a single crime.)
 {¶ 28} The state's contention that defendant's robbery conviction and aggravated robbery conviction merged is not, however, supported by the plain language of the trial court's judgment. In its judgment, the trial court stated:
 The court hereby imposes the following sentence AS TO COUNT ONE SEVEN (7) YEARS WITH AN ADDITIONAL THREE (3) YEARS FOR FIREARM SPECIFICATION AND AS TO COUNT TWO, SENTENCE WILL MERGE WITH COUNT ONE TO BE SERVED AT THE OHIO DEPARTMENT OF REHABILIATION AND CORRECTION. SAID SENTENCE WILL RUN CONSECUTIVE WITH EACH OTHER.
(Sept. 28, 2007 Judgment Entry; emphasis sic.)
 {¶ 29} By plain language in its judgment, the trial court merged defendant's sentences, not defendant's convictions. The trial court's judgment also is devoid of any discussion regarding whether it considered aggravated robbery and robbery to be allied offenses of similar import, or whether defendant committed robbery and aggravated robbery with a single animus.
 {¶ 30} "In Ohio a court speaks through its journal. Accordingly, it is imperative that the court's journal reflect the truth." State ex rel.Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118. "All courts have a clear legal duty to have their journals reflect the truth. All litigants have a clear legal right to have the proceedings they are involved in correctly journalized." Id. at 119.
 {¶ 31} Here, if the trial court intended to merge defendant's convictions for robbery and aggravated robbery, the plain language of the trial court's judgment does not reflect *Page 14 
such an intention. Moreover, even if the parties had a tacit understanding that defendant's convictions for robbery and aggravated robbery were merged by the trial court, we find the trial court's judgment is, at best, ambiguous as to whether defendant's convictions for robbery and aggravated robbery were merged as a result of the trial court's judgment.
 {¶ 32} Accordingly, we cannot agree with the state's contention that defendant was not prejudiced because defendant's convictions for robbery and aggravated robbery allegedly were merged.
 {¶ 33} We do agree, however, with the state's contention thatColon I does not require reversal of defendant's aggravated robbery conviction.
 {¶ 34} First, in its reconsideration of Colon I, the Colon II court stated that it assumed that the facts that led to its opinion inColon I were "unique," id. at ¶ 6, and it "emphasize[d] that the syllabus in Colon I is confined to the facts in that case." Id. at ¶ 8. Furthermore, in reaching its holding in Colon I, the Supreme Court of Ohio construed division (A)(2) of robbery under R.C. 2911.02, not aggravated robbery under R.C. 2911.01. As an intermediate appellate court, we are therefore reluctant to expansively construe Colon I's
holding to statutes not considered by Colon I, especially sinceColon II emphasized that the syllabus in Colon I is confined to the facts in that case. See, generally, James A. Keller, Inc. v.Flaherty (1991), 74 Ohio App.3d 788, 792 (acknowledging that the Supreme Court of Ohio is the primary judicial policy maker and stating that "[a]s an intermediate appellate court, we should use caution in determining that the public policy of this state should be"). *Page 15 
 {¶ 35} Second, in State v. Ferguson, Franklin App. No. 07AP-640,2008-Ohio-3827, this court recently discussed the application ofColon I to the crime of aggravated robbery under R.C. 2911.01(A)(1). Id. at ¶ 42-50. In Ferguson, this court ultimately found the holding ofColon I to be inapplicable to the appellant's conviction for aggravated robbery under R.C. 2911.01(A)(1). Id. at ¶ 50. FollowingFerguson, and adopting its reasoning, we therefore conclude that in this case defendant's aggravated robbery conviction under R.C. 2911.01(A)(1) also is unaffected by Colon I's holding. See, generally,Ferguson, at ¶ 42-50.
 {¶ 36} In sum, for the reasons set forth above, we therefore conclude that Colon I, as reconsidered in Colon II, requires reversal of defendant's conviction for the offense of robbery under R.C. 2911.02(A)(2), but does not require reversal of defendant's aggravated robbery conviction under R.C. 2911.01(A)(1).
 {¶ 37} Accordingly, finding that Colon I, as reconsidered in ColonII, requires reversal of defendant's robbery conviction under R.C. 2911.02(A)(2), we sustain in part defendant's fourth assignment of error.
 {¶ 38} Because we have determined that defendant's robbery conviction under R.C. 2911.02(A)(2) cannot stand based on Colon I, as reconsidered in Colon II, we find that such a determination renders moot defendant's contentions in his first and third assignments of error that his robbery conviction is supported by legally insufficient evidence and his robbery conviction is against the manifest weight of the evidence. We further conclude that our determination finding that defendant's robbery conviction under R.C. 2911.02(A)(2) cannot stand based on Colon I, as reconsidered in Colon II, also renders moot defendant's second assignment of error as to defendant's robbery *Page 16 
conviction, wherein defendant asserts the trial court erroneously overruled defendant's motion for acquittal. See, e.g., Schwab v.Lattimore, 166 Ohio App.3d 12, 2006-Ohio-1372, at ¶ 10 (stating that "[w]hen circumstances prevent an appellate court from granting relief in a case, the mootness doctrine precludes consideration of those issues"). (Fn. omitted.)
 {¶ 39} Because the remaining assignments of error as applied to defendant's conviction for robbery under R.C. 2911.02(A)(2) are moot, we therefore shall limit our consideration of defendant's remaining assignments of error to defendant's conviction for aggravated robbery with firearm specification.
 {¶ 40} By his first and third assignments of error, defendant asserts that his conviction for aggravated robbery with firearm specification is supported by legally insufficient evidence, and that this conviction is against the manifest weight of the evidence.
 {¶ 41} When an appellant challenges his or her conviction as not supported by sufficient evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89; State v. Thompkins (1997), 78 Ohio St.3d 380, 386, reconsideration denied, 79 Ohio St.3d 1451; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility, rather it essentially assumes the state's witnesses testified truthfully and determines if that *Page 17 
testimony satisfies each element of the crime. State v. Woodward, Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 16, cause dismissed,103 Ohio St.3d 1489, 2004-Ohio-5606, reconsideration denied,104 Ohio St.3d 1428, 2004-Ohio-6585.
 {¶ 42} Comparatively, when presented with a manifest-weight claim in a criminal matter, an appellate court engages in a limited weighing of the evidence to determine whether the fact finder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Thompkins, at 387;Conley, supra; State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 77. "[Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 25, citing Thompkins, at 386-387. When presented with a manifest-weight claim, "a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Wilson, at ¶ 25. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'" Id., quotingThompkins, at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
 {¶ 43} "The question for the reviewing court [in a manifest-weight claim] is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Group, *Page 18 
at ¶ 77, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, Thompkins, at 387; id. at paragraph four of the syllabus (construing and applying Section 3[B][3], Article IV, Ohio Constitution) (holding that "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required").
 {¶ 44} Although when reviewing a manifest-weight claim an appellate court engages in a limited weighing of the evidence, Thompkins, at 387;Conley, supra; Group, at ¶ 77, "[determinations of credibility and weight of the testimony remain within the province of the trier of fact." State v. Walters, Franklin App. No. 06AP-693, 2007-Ohio-5554, at ¶ 94, appeal not allowed (2008), 117 Ohio St.3d 1425, 2008-Ohio-969, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "The jury thus may take note of the inconsistencies and resolve them accordingly, `believ[ing] all, part or none of a witness's testimony.'" Walters, at ¶ 4, quoting State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67. See, also, State v. Harris, Franklin App. No. 02AP-977, 2003-Ohio-2414, at ¶ 18.
 {¶ 45} Besides asserting, as stated in his first and third assignments of error, that his conviction for aggravated robbery with firearm specification is supported by legally insufficient evidence and that this conviction is against the manifest weight of the evidence, in his second assignment of error, defendant also asserts that the trial court prejudicially erred by overruling defendant's Crim. R. 29 motion at the close of the state's evidence as to the charge of aggravated robbery with firearm specification.[5] See, *Page 19 
generally, Crim. R. 29(A) (providing in part that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.").
 {¶ 46} "A motion for acquittal at the close of the state's case tests the sufficiency of the evidence." State v. Miley (1996),114 Ohio App.3d 738, 742 (Harsha, J., concurring in judgment only), appeal not allowed (1997), 77 Ohio St.3d 1548. "Pursuant to Crim. R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt." Miley, at 742, citing State v. Bridgeman (1978),55 Ohio St.2d 261, 263; see, also, State v. Fyffe (1990),67 Ohio App.3d 608, 613, citing Cincinnati v. Robben (1982), 8 Ohio App.3d 203 (stating that "[w]hen a question is before a trial court on a defendant's motion for judgment of acquittal, the trial court is required to construe the evidence most strongly in favor of the state, the party against whom the motion has been directed").
 {¶ 47} "When reviewing the trial court's denial of a motion for acquittal under Crim. R. 29, [an appellate court] applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction." State v. Rucker (Jan. 22, 2002), Butler App. No. CA2001-04-076, citing State v. Thompson (1998), *Page 20 127 Ohio App.3d 511, 525, appeal not allowed, 83 Ohio St.3d 1451; see, also, State v. Ali, 154 Ohio App.3d 493, 2003-Ohio-5150, at ¶ 21, citingState v. Carter (1995), 72 Ohio St.3d 545, 553, certiorari denied,516 U.S. 1014, 116 S.Ct. 575; State v. George, Franklin App. No. 02AP-1412,2003-Ohio-6658, at ¶ 9, appeal not allowed (2004), 102 Ohio St.3d 1422,2004-Ohio-2003. "An appellate court undertakes a de novo review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt." Miley, at 742, citing State v.White (1989), 65 Ohio App.3d 564, 568; see, also, State v. Adams, Butler App. No. CA2006-07-160, 2007-Ohio-2583, at ¶ 19, motion for delayed appeal denied, 116 Ohio St.3d 409, 2007-Ohio-6140. "A judgment of acquittal is inappropriate `if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.'"State v. Macias (June 8, 2001), Lucas App. No. L-99-1363, dismissed, appeal not allowed by, 93 Ohio St.3d 1428, quoting Bridgeman, supra, at syllabus.
 {¶ 48} Because when reviewing a trial court's denial of a motion for acquittal under Crim. R. 29 an appellate court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction, Rucker, supra, citingThompson, at 525; Ali, at ¶ 21; George, at ¶ 9, our review of defendant's three remaining assignments of error therefore resolves to determining: (1) whether defendant's conviction for aggravated robbery with firearm specification is supported by legally sufficient evidence, and (2) whether the conviction for aggravated robbery with firearm specification is against the manifest weight of the evidence. *Page 21 
 {¶ 49} R.C. 2901.05(A) provides in part that "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution." See, also, In re Winship (1970),397 U.S. 358, 361-362, 90 S.Ct. 1068. Thus, to support defendant's conviction for aggravated robbery with firearm specification, the state must prove beyond a reasonable doubt all the elements of aggravated robbery, as well as the necessary elements to support a conviction for a firearm specification.
 {¶ 50} To support a conviction for a firearm specification, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. R.C. 2941.145 and 2923.11(B)(1); State v. Murphy (1990),49 Ohio St.3d 206, 208; State v. Gaines (1989), 46 Ohio St.3d 65, modified byMurphy, supra; State v. Griffin (Dec. 11, 1998), Hamilton App. No. C-980143, motion for delayed appeal denied (1999), 86 Ohio St.3d 1440. Under R.C. 2941.145, when determining whether a firearm was used to facilitate an offense, the term "firearm" has the same meaning as in R.C. 2923.11. See R.C. 2941.145(D).
 {¶ 51} R.C. 2911.01, aggravated robbery, provides in part:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 (C) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree. *Page 22 
 (D) As used in this section:
 (1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.
See, also, former R.C. 2913.01(K)(1)[6] (defining "theft offense," as among other things a violation of R.C. 2911.01, aggravated robbery, and R.C. 2911.02, robbery); R.C. 2923.11(A) (defining "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon").
 {¶ 52} "For purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun, and it is not necessary that the prosecution prove that the gun was capable of firing a projectile." State v. Vondenberg (1980), 61 Ohio St.2d 285, syllabus; see, also, Vondenberg, at 288 (determining that "a gun designed for use as a weapon may be considered a `deadly weapon' for purposes of sustaining a conviction of aggravated robbery, even though such gun is found to have been unloaded at the time of the robbery");State v. Terry (May 15, 1986), Cuyahoga App. No. 50602.
 {¶ 53} In the present case, the state claimed defendant allegedly used a gun as a "firearm" when he committed aggravated robbery against Joshua Vidor. Cf. State v. Hicks (1984), 14 Ohio App.3d 25 (finding that a toy handgun is a "deadly weapon" under former R.C. 2923.11[A] because of its possible use as a bludgeon).
 {¶ 54} R.C. 2923.11(B) defines "firearm" as follows: *Page 23 
 (1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.
 {¶ 55} When attempting to prove that a deadly weapon constitutes a firearm, the state is not required to produce the gun or offer direct evidence that the gun is operable. State v. Murphy (1990),49 Ohio St.3d 206; State v. Boddie (Dec. 28, 2001), Montgomery App. No. 18709; R.C. 2923.11(B). In Boddie, the Second District Court of Appeals explained:
 In proving that a deadly weapon constitutes a firearm, the State need not produce the gun or offer direct, empirical evidence that the gun is operable, that is, capable of expelling or propelling a projectile via an explosive or combustible propellant. State v. Murphy (1990), 49 Ohio St.3d 206. Proof of operability can be established by lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. Id.
 Circumstantial evidence including the representations and actions of the person exercising control over the gun may also be relied upon. R.C. 2923.11(B)(2). For example, displaying a gun during a robbery coupled with an explicit threat to shoot and kill the victim if the perpetrator's demands for money are not met is sufficient circumstantial evidence to permit a reasonable inference that the gun used during the robbery was operable. Murphy, supra. Moreover, pointing a gun at a robbery victim, even without an explicit threat to use it, constitutes an implicit threat sufficient to infer that the gun is operable. State v. Nelson (August 18, 1995), Montgomery App. No. 14775, unreported. *Page 24 
 {¶ 56} Here, the victim of the aggravated robbery, Joshua Vidor, testified that on August 28, 2006, at approximately 3:30 p.m., he was replacing the back door to a rental property that he owned on Basset Avenue in Franklin County, Ohio. (Tr. Vol. I, at 36, 38.) Mr. Vidor testified:
 * * * When I was finishing caulking or just before I finished, I heard a noise and I turned around to see two young men aiming guns at me. One of them said something to the extent of, don't make any noise, if you do we'll shoot you. They told me to lift up my hands where the other one came forward and took my keys, my cell phone, my wallet. He then told me to turn around, and yelled down; which I did, facing the door away from where they were at.
 The one stayed somewhat behind me with a gun aimed at me while the other one went back into the alley where my truck was locked and proceeded to try to open the truck door but was unable to get the truck door opened for whatever reason. Came back and asked which one of the three keys opened the door of the truck. And I pointed out to him the keyless entry worked as well as the only automobile key on the ring went to the truck. He asked me which one of my credit cards was the bank card, which I informed him which one was. I at that time was told to turn back around, which I did, and I was still kneeling at that time.
 The one gentleman, or I guess you wouldn't call him a gentleman, but went back to the truck. I heard it get started. And I don't know which one said it, but one of them said to the other, don't shoot him or don't kill him. I don't recall. All I recall is being very happy to hear that and they peeled out and drove away with my truck.
Id. at 37-38.
 {¶ 57} According to Mr. Vidor, although he ultimately was able to recover his truck and his wallet, his cash, a bank card, and his cell phone were never recovered. Id. at 44.
 {¶ 58} Vidor testified that there were two robbers, "[b]oth men in probably their twenties." Id. According to Mr. Vidor, both robbers were African-American and "neither of *Page 25 
them were very large. One had larger pec muscles that stood — you could see them through his shirt. But overall, neither one of them were large. They were both smaller stature. The one fellow had cornrows. The one fellow had the — not the one with the larger pecs, the other one had a little bit leaner face, hard to describe in words, but more prominent cheekbones on the one. Kind of hard to put in words." Id. at 44-45. According to Mr. Vidor, the robber who had his hair in "cornrows" was "[t]he one that was dealing with the truck, the one that was not guarding me the whole time, the one that was not frisking me was the one with the cornrows." Id. at 46.
 {¶ 59} Detective Jason Wood, a Columbus police officer, testified that, after law enforcement authorities in Sheffield Lake, Ohio, notified him that they had found Mr. Vidor's vehicle with two persons asleep in it, Detective Wood traveled to Sheffield Lake and had contact with two suspects who were identified as defendant and Dejuan Glover. (Tr. Vol. I, 94.) According to Detective Wood, at the time that he had contact with defendant in Sheffield Lake, defendant wore his hair in "braids." Id. at 94-95. Detective Wood testified that at one point he showed Mr. Vidor a photo array that included a photograph of defendant wherein defendant was wearing his hair in braids or "cornrows." Id. at 95, 97. Detective Wood testified: "Mr. Vidor when he viewed the array, he pointed out photos number one and number five being looking like one of the robbers and then settled on number five as being the closest as one of the robbers." Id. at 98. Detective Wood also testified: "The comments that I wrote was [sic] Mr. Vidor viewed the array and stated that photo number one and five looked familiar, with photo number five being closest to what the robber looked like." Id. at 99. *Page 26 
 {¶ 60} Prior to Detective Wood's testimony, Mr. Vidor himself had testified that he "couldn't say for a fact" that photograph number five was a picture of defendant, "[b]ut there wasn't much doubt in my mind." Id. at 53. When asked what he meant by that testimony, Mr. Vidor clarified: "I was pretty certain. I mean, there was, you know, the lighting wasn't the same. I didn't get to see their whole bodies. You know, if I had seen a full picture perhaps of their whole body and everything maybe there would have been absolutely no doubt in my mind whatsoever." Id. See, also, State's Exhibit C-1.[7] At trial, Mr. Vidor was unable to make an in-court identification of defendant. Id. at 60.
 {¶ 61} In the instant case, although Mr. Vidor expressed some uncertainty in his identification of defendant in the photo array, he nonetheless identified defendant as one of the robbers after viewing the photo array. Such evidence is legally sufficient to support a finding that defendant was one of the robbers.
 {¶ 62} Besides claiming that Mr. Vidor's identification of defendant is supported by legally insufficient evidence, defendant also claims, however, that Mr. Vidor's identification of defendant is against the manifest weight of the evidence. In reviewing this claim, we are mindful that "[determinations of credibility and weight of the testimony remain within the province of the trier of fact." Walters, at ¶ 94, citingDeHass, at paragraph one of the syllabus; see, also, Harris, supra, at ¶ 18. Here, notwithstanding defendant's claim that Mr. Vidor's identification is against the manifest weight of the evidence, the testimony of Mr. Vidor and Detective Wood, and reasonable inferences drawn from these witnesses' *Page 27 
testimony, if believed by the jury, as the trier of fact, support the state's allegation that defendant was one of the robbers.
 {¶ 63} Moreover, as to the issue of whether defendant displayed, brandished, indicated that he possessed, or used a deadly weapon when he robbed Mr. Vidor, we also find that legally sufficient evidence supports such a finding.
 {¶ 64} At trial, Mr. Vidor, who stated he had some familiarity with handguns (Tr. Vol. I, at 47-78), testified:
 The one fellow that did not have the cornrows, he had what appeared to me to be maybe a Berretta 92, the stainless model, at least the barrel part, very dirty, looked like it hadn't been cleaned in a long time, had a lot of the black around it in front of the barrel.
 The other fellow [defendant] looked like he had either a Glock or a Hi-Point semiautomatic pistol just judging by the narrow and tall profile of the barrel. That was the black gun and I couldn't tell which one in fact it was. It's hard to tell a black gun, the details. So that was — that was the best of my knowledge.
Id. at 49; 54-55.
 {¶ 65} Mr. Vidor also testified:
 The one that stayed with me the whole time during the process and that also took the contents from my pocket had what appeared to be a stainless barrel Berretta 92, or something that looked similar, dirty. And the other one had a black what appeared to be either a Hi-Point or a Glock, a semiautomatic pistol. I say either one because sometimes it's hard to tell the difference. They both have a narrow, tall profile on the barrel.
Id.
 {¶ 66} Mr. Vidor further testified that the guns used in the robbery appeared to be "real guns" and, at the time of the robbery, he regarded the guns as such. Id. at 63. On *Page 28 
direct examination, after having been shown photographs of the weapons recovered in his truck, Mr. Vidor testified that the photographs showed weapons that were "not exactly, but pretty close" to the guns the robbers used at the time of the robbery. Id. at 55. Mr. Vidor later conceded that his descriptions about the weapons used in the robbery, which he made shortly after the robbery, may have been inaccurate to a certain extent. Id. at 72-73; 118-119.
 {¶ 67} Despite Mr. Vidor's concession about his description of the weapons, he was certain defendant used a gun when defendant robbed him, and that this gun appeared to be "real." Such evidence is legally sufficient to support a finding that defendant displayed, brandished, indicated that he possessed, or used a deadly weapon when he robbed Mr. Vidor.
 {¶ 68} Also, although Mr. Vidor's concession about his descriptions of the weapons used in the robbery may have raised doubts as to the state's evidence, we cannot conclude that the jury's finding that beyond a reasonable doubt defendant committed a theft offense while using a deadly weapon is against the manifest weight of the evidence. Here, the testimony of Mr. Vidor, and reasonable inferences drawn from his testimony, as well as reasonable inferences drawn from the evidence of a 9 mm Helwan semiautomatic handgun that was recovered near defendant in Mr. Vidor's truck at the time of defendant's apprehension (id. at 122-124; State's Exhibit Nos. A-1 and A-2), if believed by the jury, as the trier of fact, support the state's allegation that defendant displayed, brandished, indicated that he possessed, or used a deadly weapon when he robbed Mr. Vidor. See, generally, DeHass, at paragraph one of the syllabus; see, also, State v. Henry, Franklin App. No. 04AP-1061, 2005-Ohio-3931, at ¶ 33, appeal not *Page 29 
allowed, 107 Ohio St.3d 1699, 2005-Ohio-6763, quoting Bourjaily v.United States (1987), 483 U.S. 171, 179-180, 107 S.Ct. 2775 (observing that the probative value of circumstantial evidence equals that of direct evidence and "`individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it'").
 {¶ 69} Additionally, although no direct evidence by the state proved that the firearm used by defendant in the robbery was operable, such a failure by the state is not fatal as to whether the weapon used by defendant constitutes a firearm for the purpose of proving the firearm specification. "In proving that a deadly weapon constitutes a firearm, the State need not produce the gun or offer direct, empirical evidence that the gun is operable, that is, capable of expelling or propelling a projectile via an explosive or combustible propellant." Boddie, supra, citing Murphy, supra. "[P]ointing a gun at a robbery victim, even without an explicit threat to use it, constitutes an implicit threat sufficient to infer that the gun is operable." Boddie, supra, citingNelson, supra.
 {¶ 70} Finally, in the present case, the jury, as the trier of fact, was free to believe or disbelieve, Officer Shawn Corr, a police officer for the city of Sheffield Lake when he testified that "Dante Hill said that they were lost. And I believe DeJuan Glover stated that something to the effect that they came across [Mr. Vidor's] vehicle from another person in Toledo. They were driving around, got lost and they seen [sic] cornfields and somehow ended up in Sheffield Lake." (Tr. Vol. I, at 133-134.)
 {¶ 71} In McKay Mach. Co. v. Rodman (1967), 11 Ohio St.2d 77, the Supreme Court of Ohio explained:
 * * * [I]n the last analysis, the jury or the court, if a jury is waived, is the sole weigher of credibility and testimony. The jury can accept all, a part or none of the testimony offered by *Page 30 
a witness whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. In other words, "(t)he jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. (In so doing it) * * * should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the * * * (plaintiff) or the defendant, and his interest, if any, in the outcome." State v. Antill, 176 Ohio St. 61, 67, 197 N.E.2d 548. * * *
Id. at 82. (Fn. omitted.)
 {¶ 72} Accordingly, after independently reviewing the evidence, and bearing in mind the jury's superior, first-hand perspective in judging the demeanor and credibility of witnesses, see, e.g., Harris, supra, at ¶ 18, we cannot conclude that the jury "lost its way" by finding that the state's evidence was persuasive to support a conviction for aggravated robbery with firearm specification, or that this is "`* * * the exceptional case in which the evidence weighs heavily against conviction.'" Group, at ¶ 77, quoting Martin, at 175. Stated differently, we cannot conclude that, after determining the credibility and weight of the testimony, and taking note of any inconsistencies, the jury erred by finding that beyond a reasonable doubt defendant committed aggravated robbery against Joshua Vidor, and during the commission of this robbery defendant displayed, brandished, indicated that he possessed, or used a deadly weapon when he robbed Mr. Vidor.
 {¶ 73} Therefore, for the reasons set forth above, we find that defendant's conviction for aggravated robbery with firearm specification is supported by legally sufficient evidence, and this conviction is not against the manifest weight of the evidence. We, therefore, overrule defendant's first, second, and third assignments of error with
respect to defendant's conviction for aggravated robbery with firearm specification. *Page 31 
 {¶ 74} Moreover, as discussed above, because defendant's robbery conviction under R.C. 2911.02(A)(2) cannot stand based on Colon I, and reconsidered in Colon II, we find this determination renders moot defendant's first, second, and third assignments of error with respect to defendant's conviction for the offense of robbery.
 {¶ 75} In summary, having overruled defendant's first, second, and third assignments of error with respect to defendant's aggravated robbery conviction with firearm specification; having found that defendant's first, second, and third assignments of error with respect to defendant's robbery conviction are moot; and having sustained in part defendant's fourth assignment of error, we reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for further proceedings in accordance with law and consistent with this opinion. We also instruct the common pleas court to vacate defendant's conviction and sentence for the offense of robbery under R.C. 2911.02(A)(2).
Judgment reversed in part and cause remanded with instructions.
SADLER and TYACK, JJ., concur.
[1] By this same indictment, Glover also was charged with one count of aggravated robbery with firearm specification, two counts of robbery, each with firearm specification, as well as having a weapon while under disability. Defendant and Glover were tried together in a single jury trial.
[2] In Colon I, the Supreme Court of Ohio observed: "In closing, the prosecuting attorney said, `Vincent Colon robbed Samuel Woodie. He attempted to commit a theft offense, and he inflicted harm. It's simple. I ask you to keep it that simple and find him guilty.'" Id. at ¶ 31, fn. 2.
[3] In Colon II, on reconsideration, the Supreme Court of Ohio reiterated:
 We assume that the facts that led to our opinion in Colon I are unique. As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. In Colon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E.2d 917. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31, 885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id.
Id. at ¶ 6.
[4] Although in Colon II, the majority stated that "[a]pplying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment," id. at ¶ 8, and "[c]onsistent with our discussion herein, we emphasize that the syllabus in Colon I is confined to the facts in that case," id., Justice O'Donnell in his dissent, with Justices Lundberg Stratton and Lanzinger concurring, noted: "I fail to grasp * * * that a different defendant who faces a defective indictment and raises the matter as Colon did on appeal should not be treated in the same manner as Colon." Id. at ¶ 12. Justice O'Donnell, with Justices Lundberg Stratton and Lanzinger, further stated:
 Structural-error analysis does not permit a court to determine that a particular error, e.g., omission of an essential element from an indictment, is structural error in one case but not structural error in another. Rather, structural-error analysis is applied when a particular error permeates the trial and renders it fundamentally unfair in every case, such that, when the error occurs, "no criminal punishment may be regarded as fundamentally fair."
Id. at ¶ 13, quoting Rose v. Clark (1986), 478 U.S. 570, 577,106 S.Ct. 3101. (Emphasis sic.)
[5] According to the record, at the sentencing hearing, the trial court also denied another request by defendant for acquittal pursuant to Crim. R. 29; however, in his second assignment of error, defendant does not appear to challenge this second denial of his motion for acquittal. See, generally, State v. Miley (1996), 114 Ohio App.3d 738, 742 (Harsha, J., concurring in judgment only), appeal not allowed (1997),77 Ohio St.3d 1548, citing State v. Misch (1995), 101 Ohio App.3d 640, 650, dismissed, appeal not allowed, 73 Ohio St.3d 1410, reconsideration denied, 73 Ohio St.3d 1455; State v. Beehive Ltd. Partnership (1993),89 Ohio App.3d 718, 723, jurisdictional motion overruled (1994),68 Ohio St.3d 1429 (stating that "[t]he trial court applies the same standard in ruling on motions for acquittal presented either at trial or those made after judgment pursuant to Crim. R. 29(C)").
[6] After the crimes occurred from which charges against defendant arose, R.C. 2913.01 was amended by (2006) Sub. H.B. No. 347, effective March 14, 2007. Division (K)(1) was unaffected by the amendments of (2006) Sub. H.B. No. 347.
[7] According to State's Exhibit C-1, after viewing an investigative photo array, Mr. Vidor stated: "I viewed photo's [sic] 1-6 to identify the people who robbed me. It was hard for me to choose between photo's [sic] #1 and #5, but I think it was #5. Both #1 and #5 looked similar to what I remember." *Page 1