[Cite as *State v. Clark*, 2023-Ohio-4434.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 22AP-433<br>(C.P.C. No. 20CR-5890) |
| John A. Clark, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 7, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Seth L. Gilbert* for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Campbell Law, LLC*, and *April F. Campbell* for appellant. **Argued:** *April F. Campbell.*

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, John A. Clark, Jr., appeals from the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas, after a jury found him guilty of one count of election falsification, and the trial court sentenced him to 120 days in jail and 5 years of community control. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On December 16, 2020, a Franklin County Grand Jury returned a four-count indictment charging Mr. Clark with two counts of election falsification in violation of R.C. 3599.36, each a fifth-degree felony, and two counts of tampering with records in violation of R.C. 2913.42, each a third-degree felony. The offenses related to financial

reports submitted on July 31, 2019 and August 15, 2019 on behalf of the Columbus Clean Energy Initiative ("CCEI").

{¶ 3} On December 17, 2020, the Chief Prosecutor with the Columbus City Attorney's Office filed a notice of appearance indicating he had been appointed to serve as a special prosecutor in this case. (Dec. 17, 2020 Notice of Appearance. *See also* May 9, 2022 Tr. Vol. I at 11-12.)

{¶ 4} During trial, three of CCEI's semiannual campaign finance reports for 2019 were admitted into evidence without objection. (*See* May 11, 2022 Tr. Vol. III at 586-87; State's Exs. A, B, and C.) CCEI's 2019 semiannual finance report filed on July 31, 2019 was marked as State's Exhibit A. An amended semiannual campaign finance report filed on August 15, 2019 was marked as State's Exhibit B. And a second amended campaign finance report filed on October 14, 2019 was marked as State's Exhibit C. Each of these reports contained three forms: Form 30-A (described at trial as a summary cover sheet (May 10, 2022 Tr. Vol. II at 339)); Form 31-A (a statement of monetary contributions received by the campaign); and Form 31-B (a statement of the campaign's expenditures).

{¶ 5} In each of the three reports, Form 30-A showed $53,000 in monetary contributions, while the amount of expenditures varied ($50,199 in State's Exhibit A, $44,977 in State's Exhibit B, and $41,977 in State's Exhibit C). (*See* State's Exs. A, B, and C; Tr. Vol. II at 311-24.)

{¶ 6} The data in Form 31-A varied widely across the three reports (five contributions from five individual donors listed in State's Exhibits A and B, and only one contribution from Mr. Clark himself listed in State's Exhibit C). (*See id.*) Relevant to Mr. Clark's count of conviction, Form 31-A in the amended campaign finance report filed on August 15, 2019 (State's Ex. B) listed the following monetary contributions:

1.  $10,000 from Eunice Heard on June 1, 2018

2.  $10,000 from Christina Gonzaga on June 1, 2018

3.  $13,000 from George Cooper on June 1, 2018

4.  $10,000 from Udell Hollins on June 1, 2018

5.  $10,000 from Sonia Martinez on June 1, 2018

(*See* State's Ex. B at 2; Tr. Vol. II at 320-21.)

{¶ 7} Renata Ramsini, Chief Ethics Officer and Campaign Finance Administrator for the City of Columbus, testified about her role reviewing campaign finance reports for the city, the functions of the online filing database, and the three reports Mr. Clark submitted on behalf of CCEI. The state did not present images of the database as it existed in 2019 for the jury to consider. In an email to defense counsel, Ms. Ramsini explained that she could not provide images in response to a public records request because the "system does not give [her] the ability to take screenshots or images of previous versions of the site." (Ct.'s Ex. 2 at 1.) Therefore, the state had to rely on Ms. Ramsini's testimony to establish how a user would have experienced the database in 2019. With respect to the database in existence in 2019, Ms. Ramsini testified that an election falsification attestation would have appeared on-screen prior to final submission of a report. (Tr. Vol. II at 304-05.) Ms. Ramsini acknowledged that the website has been modified since 2019 and now includes a final checkbox with "the same language" before a filer can click to submit their report. (Tr. Vol. II at 337.) But she unequivocally testified that users of the online database in 2019 would have seen an election falsification attestation before clicking to submit their final reports. (Tr. Vol. II at 328-30, 339.)

**{¶ 8}** The lead detective on this case, Detective Todd Schiff, testified about his conversations with four[1] of the individuals listed as contributors in the August 2019 report and his review of bank accounts belonging to Mr. Clark, CCEI, and ProEnergy Ohio, LLC. Critically, Detective Schiff testified that all of the individuals he spoke with denied having made monetary contributions to CCEI. (*See* Tr. Vol. II at 396-400.) And, he noted, over the course of the relevant time periods, none of the bank records he gathered reflected any deposits or withdrawals corresponding with the amounts listed in State's Exhibits A, B, and C. (*See, e.g.*, Tr. Vol. II at 404-08.)

**{¶ 9}** Mr. Clark's attorney, Patrick Quinn, also testified at trial. Mr. Quinn explained that while he educated Mr. Clark about the campaign finance filing requirements, he did not have any role in filing the three reports on behalf of CCEI (Tr. Vol. II at 452, 472), he did not have access to the campaign's online database account (Tr. Vol. II at 470), and he was not aware he had been designated as CCEI's treasurer until he received a letter about deficiencies in the campaign's first semiannual report (Tr. Vol. II at 478-79). Mr. Quinn testified that he did not keep financial records for the campaign and he had no personal knowledge about the campaign's contributions or expenditures. (Tr. Vol. II at 470, Tr. Vol. III at 544.) He acknowledged that before Mr. Clark filed the July 2019 report, he reached out to Mr. Quinn with a completed draft for his review. (*See* Defense Ex. 2.) Because he saw no formatting errors or missing information, Mr. Quinn responded, "Hi John, these look good to me. Let em rip." (*Id.*; Tr. Vol. III at 543-44.)

**{¶ 10}** Eunice Heard and Sonia Martinez, who were listed as contributors in CCEI's July and August 2019 filings, also testified as part of the state's case. Ms. Martinez testified

---

[1] He was unsuccessful in his attempt to reach the fifth listed contributor—George Cooper. (Tr. Vol. II at 400.)

that she and her husband volunteered for CCEI by gathering petition signatures for one day and by validating signatures. (Tr. Vol. III at 557-58.) She testified that she never contributed money to CCEI and only learned she was listed on the campaign's finance report when police officers came to speak with her as part of their investigation in this case. (Tr. Vol. III at 557, 566.) Ms. Heard testified that she contributed a significant amount of volunteer time to Mr. Clark's statewide and citywide endeavors from 2015 to 2019, by entering data, cross-referencing signatures, and managing signature gatherers while Mr. Clark was on vacation. (Tr. Vol. III at 571-72.) But, she unequivocally asserted that she did not keep track of her volunteer hours, she did not make any monetary contributions to CCEI, and she was not aware she would be listed as a contributor on the campaign's finance report. (Tr. Vol. III at 573-75, 577.)

{¶ 11} Once the state concluded its case, Mr. Clark testified in his own defense. Mr. Clark described his interest in clean energy and his previous attempt at getting a statewide initiative on the ballot. (*See, e.g.,* Tr. Vol. III at 599-603.) He then testified about CCEI and the three relevant campaign finance reports.

{¶ 12} With respect to the first report filed on July 31, 2019, Mr. Clark explained that he was on vacation and only learned from Mr. Quinn that he had to complete a report shortly before the deadline. (Tr. Vol. III at 609-10.) He had never submitted a campaign finance report, so he did the best he could to follow instructions and submit the necessary information. (Tr. Vol. III at 610-11.) He testified that although he knew Ms. Heard, Ms. Martinez, and the others had not contributed money, he listed them anyway because they had contributed their time to the campaign. (Tr. Vol. III at 617-21.) He described sending a draft of the filing to Mr. Quinn for his review and being told he could later amend the report with more accurate information. (Tr. Vol. III at 615-16, 622.)

{¶ 13} Similarly, with respect to CCEI's August and October 2019 amended filings, Mr. Clark admitted he knew the campaign had not yet received monetary contributions when he submitted these reports, the five listed campaign volunteers did not contribute any money to the campaign, and he did not contribute $53,000 to the campaign. (Tr. Vol. III at 633, 651-53, 658, 661-62.) He also acknowledged he was the person who input the relevant information that populated Forms 30-A, 31-A, and 31-B, and he was the person who clicked to submit each report. (Tr. Vol. III at 613-14, 655-58, 670.)

{¶ 14} Following deliberations, the jury found Mr. Clark guilty of one count of election falsification related to the August 15, 2019 filing and not guilty of election falsification and tampering with records related to the July 31, 2019 filing. Upon the state's request, the trial court ordered that a nolle prosequi be entered as to the tampering with records charge related to the August 15, 2019 filing. (July 18, 2022 Decision and Entry at 1.)

{¶ 15} On July 12, 2022, the trial court sentenced Mr. Clark to 120 days in jail and a five-year period of community control. (July 18, 2022 Decision and Entry at 1-2.) Mr. Clark timely appeals.

## II. Assignments of Error

{¶ 16} Mr. Clark asserts the following four assignments of error for our review:

> [I.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE CITY OF COLUMBUS, WHO WAS THE VICTIM, TO TRY CLARK.

> [II.] THE STATE'S EVIDENCE THAT CLARK COMMITTED ELECTION FALSIFICATION WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.

> [III.] CLARK'S CONVICTIONS SHOULD BE REVERSED BECAUSE HIS COUNSEL WAS INEFFECTIVE, RESULTING IN PREJUDICE TO CLARK.

[IV.] CLARK WAS DENIED HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERROR.

## III. Analysis

### A. First Assignment of Error—Role of Special Prosecutor

{¶ 17} In his first assignment of error, Mr. Clark takes issue with the "dual role" he believes the City of Columbus played in his case. Specifically, he claims the appointment of a special prosecutor from the Columbus City Attorney's Office " 'warped the framework within which the trial proceeded.' " (Appellant's Brief at 11-12, quoting *State v. Montgomery*, 169 Ohio St.3d 84, 2022-Ohio-2211, ¶ 23.) He asserts the trial court committed structural error by permitting a prosecutor with the Columbus City Attorney's Office to serve as special prosecutor in his case. For the following reasons, we disagree.

{¶ 18} Because Mr. Clark did not object to the special prosecutor's appointment below, he has forfeited all but plain error review of his argument. *See, e.g.*, *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Pursuant to Crim.R. 52(B), a plain error is one that affects substantial rights and may be noticed by an appellate court although not brought to the attention of the trial court. "To warrant reversal under plain error review, this court must find: (1) 'an error, *i.e.*, a deviation from a legal rule;' (2) the error is plain or obvious; and (3) the error affected the outcome of the trial court proceedings." *Columbus v. Carmichael*, 10th Dist. No. 22AP-306, 2023-Ohio-1386, ¶ 11, quoting *Barnes* at 27.

{¶ 19} In *Montgomery*, the Supreme Court of Ohio held that a criminal defendant's right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution is violated when the trial court permits an alleged victim to sit at the prosecutor's table throughout trial and be formally introduced to the jury as the state's representative. The court was concerned that this designation and location in the

courtroom "risked misleading the jury into thinking that just as defense counsel represents the defendant, the prosecuting attorney represents the alleged victim, or even more harmful, that the alleged victim as the complaining witness and the prosecution are one and the same." *Id.* at ¶ 23. The court concluded that such a "dual role" for a victim "warp[s] the framework within which the trial proceed[s]" and undermines a criminal defendant's right to a fair trial. *Id.* And, because this error is so pervasive and its effect on the fundamental fairness of a trial is too difficult to gauge, the court held that it constitutes structural error requiring reversal. *Id.* at ¶ 31-33.

**{¶ 20}** We cannot agree that the special prosecutor's role during Mr. Clark's trial was akin to the facts presented in *Montgomery*. Critical to *Montgomery*'s holding was the potential harm that comes from a jury hearing and seeing a victim in this "dual role." But here, regardless of whether the special prosecutor was actually playing a dual role—a point the state contests in its brief and we need not resolve in this appeal—the jury never heard anything about it. Mr. Gibson introduced himself to the jury as one of two attorneys representing the state, and his employment with the City of Columbus never came up at trial. (*See* Tr. Vol. I at 11-12.)

**{¶ 21}** Mr. Clark reads *Montgomery* to hold that "a prosecutor *cannot* represent the interest of the complaining witness, nor vice versa." (Emphasis sic.) (Appellant's Brief at 13.) But as Mr. Clark acknowledges in his brief, the *Montgomery* court was concerned with the impact such a dual role could have on a jury. (Appellant's Brief at 13, quoting *Montgomery* at ¶ 23.) Because Mr. Gibson's role as prosecutor with the City Attorney's Office was never revealed to the jury and therefore none of the concerns associated with *Montgomery* are present here, we must reject Mr. Clark's first assignment of error.

**B. Second Assignment of Error—Sufficiency of the Evidence**

{¶ 22} In his second assignment of error, Mr. Clark argues the state's evidence was legally insufficient to support his conviction for election falsification. For the following reasons, we disagree.

**1. Controlling Law and Standard of Review**

{¶ 23} The issue of whether the evidence is sufficient to support a conviction as a matter of law involves a determination of whether the state met its burden of production at trial. *See, e.g.*, *State v. Smith*, 10th Dist. No. 03AP-1157, 2004-Ohio-4786, ¶ 16; *State v. Frazier*, 10th Dist. No. 05AP-1323, 2007-Ohio-11, ¶ 7; *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We do not weigh the evidence but instead determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. We essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime. *State v. Watkins*, 10th Dist. No. 16AP-142, 2016-Ohio-8272, ¶ 31, quoting *State v. Hill*, 10th Dist. No. 07AP-889, 2008-Ohio-4257, ¶ 41. Thus, evidence is sufficient to support a conviction where, if believed, that evidence would allow any rational trier of fact to conclude that the state proved each element of the offense beyond a reasonable doubt. *Frazier* at ¶ 7, citing *Jenks* at paragraph two of the syllabus.

{¶ 24} The jury found Mr. Clark guilty of election falsification relating to CCEI's August 15, 2019 amended campaign finance report. (July 18, 2022 Decision and Entry at 1.) R.C. 3599.36 defines election falsification, in relevant part, as follows:

> [n]o person, either orally or in writing, on oath lawfully administered or in a statement made under penalty of election falsification, shall knowingly state a falsehood as to a material matter relating to an election in a proceeding before a court, tribunal, or election official, or in a matter in relation to which an oath or statement under penalty of election falsification is authorized by law.
>
> * * *
>
> Every paper, card, or other document relating to any election matter that calls for a statement to be made under penalty of election falsification shall be accompanied by the following statement in bold face capital letters: "Whoever commits election falsification is guilty of a felony of the fifth degree."

Therefore, to convict Mr. Clark of election falsification, the state had to present sufficient evidence that Mr. Clark (1) knowingly, (2) stated a falsehood, (3) regarding a material matter, (4) and the statement was made under penalty of election falsification.

{¶ 25} Mr. Clark concedes in his merit brief that the state's evidence was sufficient to demonstrate the information contained in CCEI's August 15, 2019 report was false. (Appellant's Brief at 18.) Instead, Mr. Clark raises two arguments on appeal. First, he argues the state failed to present sufficient evidence to prove the false statements in the August 2019 report were made under penalty of election falsification. Specifically, he claims "[i]t is clear by the statute's language that [Mr.] Clark had to be under th[e] penalty [of election falsification] at the time he wrote the information uploaded onto 31A and 31B— not after the fact." (Appellant's Brief at 18.) And second, he asserts the evidence was insufficient to establish that the falsehoods in his August 15, 2019 report pertained to a "material matter." (Id. at 20.)

{¶ 26} The state makes several arguments in response. First, the state argues that whether an attestation was provided at all is a red herring. According to the state, because Mr. Clark provided false information in statements governed by R.C. 3517.10(A)(4), and

R.C. 3517.10 requires "statements of contributions and expenditures" be made "under penalty of election falsification," the state has met its burden and need not prove that an election falsification attestation appeared on the screen when Mr. Clark input the data or when he clicked to submit the August 2019 report. Second, the state asserts that even if R.C. 3599.36 does, in fact, require that an attestation accompany the relevant documents, there was sufficient evidence to establish that such attestation appeared on Form 30-A and was visible before Mr. Clark submitted his filing. And with respect to the materiality of Mr. Clark's statements, the state asserts a rational trier of fact could easily have concluded the gravity and number of falsehoods in the August 2019 report satisfied that requirement.

**2. Whether the state presented sufficient evidence that Mr. Clark's statements were made under penalty of election falsification**

{¶ 27} Pursuant to the first paragraph of R.C. 3599.36, no person shall knowingly make a false statement as to a material matter when that statement is subject to penalty of election falsification. Separate and apart from these elements of the offense, R.C. 3599.36 states in its third paragraph that an election falsification attestation must accompany every "paper, card, or other document" relating to a "matter that calls for a statement to be made under penalty of election falsification." We cannot see how the knowledge requirement in the statute's first paragraph relates to the attestation requirement in the third paragraph. Instead, the statute instructs that, to convict a person of election falsification, the state needs to prove only that a false statement was knowingly made and the statement is one that must be made under penalty of election falsification per some other section of the Revised Code.

{¶ 28} The state presented sufficient evidence to establish that Mr. Clark knowingly submitted false information regarding contributions and expenditures when he clicked to

formally submit that information as part of CCEI's amended campaign finance report. Mr. Clark reported in CCEI's amended campaign finance report that Ms. Heard and Ms. Martinez contributed $10,000 to the campaign. (State's Ex. B at 2.) However, when both women were called to testify, they denied making monetary contributions to the campaign. (Tr. Vol. III at 556-57, 573-75.) And, Mr. Clark, too, conceded that neither Ms. Heard nor Ms. Martinez contributed money to the campaign, and he was aware of that fact in 2019. (Tr. Vol. III at 633. *But see* Tr. Vol. III at 656-57 (despite these concessions, he denied the information he provided was false)).

{¶ 29} But even if R.C. 3599.36 required proof that an election falsification attestation accompanied the documents, the state presented sufficient evidence that one did. R.C. 3599.36 states that "[e]very paper, card, or other document relating to any election matter that calls for a statement to be made under penalty of election falsification shall be accompanied by the following statement in bold face capital letters: 'Whoever commits election falsification is guilty of a felony of the fifth degree.' "

{¶ 30} The statute merely requires that an attestation ***accompany*** each paper or document that calls for a statement to be made under penalty of election falsification. Forms 30-A, 31-A, and 31-B all make up a single document—a campaign finance report. Although the record does not establish that Mr. Clark would have seen the election falsification attestation at the time he typed the data into the database, there is sufficient evidence to establish that, prior to submitting the information to the government as one campaign finance report document, Mr. Clark would have seen the attestation displayed on the screen. Ms. Ramsini testified that in August 2019, a person using the campaign finance database would have seen the attestation before clicking to submit a report. (*See* Tr. Vol. II at 304-05, 339.) Although Ms. Ramsini also testified that the database has changed, and

now includes a checkbox with the attestation language (Tr. Vol. II at 337-38), that does not undermine her testimony that, in 2019, an attestation would have appeared onscreen before Mr. Clark clicked to submit the first amended campaign finance report. And that is all that would be required under this reading of R.C. 3599.36.

**3. Whether the state presented sufficient evidence that Mr. Clark's statements pertained to a material matter**

{¶ 31} Mr. Clark also argues the state failed to prove the false statements he made in the August 2019 report related to a material matter, as is required by R.C. 3599.36. Mr. Clark asserts that because Ms. Ramsini did not explicitly testify that these falsehoods were significant to the "energy issue," the state failed to present sufficient evidence to support that element of the offense. (Appellant's Brief at 20.)

{¶ 32} Although R.C. 3599.36 does not define "material," it is axiomatic that "words should be given their common, ordinary and accepted meaning unless the legislature has clearly expressed a contrary intention." *State v. Singer*, 50 Ohio St.2d 103, 108 (1977). "Material" is defined as "having real importance or great consequences." Merriam-Webster.com Dictionary, *Material*, https://www.merriam-webster.com/dictiuonary/material (accessed Dec. 6, 2023).

{¶ 33} Ms. Ramsini's opinion that the falsehoods were significant was not required to sustain Mr. Clark's conviction. R.C. 3517.10(A) mandates the filing of "a full, true, and itemized statement, made under penalty of election falsification, setting forth in detail the [campaign's] contributions and expenditures." The state presented sufficient evidence, including testimony from two listed contributors and Mr. Clark, that CCEI's August 2019 amended report included numerous false statements, including: (1) the existence of monetary contributions; (2) the amounts of those claimed monetary contributions; (3) the

names of contributors who made those monetary contributions; (4) the campaign's expenditures; (5) the amounts of those expenditures; and (6) to whom and for what those expenditures were made. ***Nearly all*** of the substantive information in the August 2019 report was false. For these reasons, we believe a rational trier of fact could have concluded these falsehoods fall within the definition of "material" and therefore the state presented sufficient evidence to meet the materiality requirement.

**{¶ 34}** Because the state presented sufficient evidence to support Mr. Clark's election falsification conviction, we overrule Mr. Clark's second assignment of error.

### C. Third Assignment of Error—Ineffective Assistance of Counsel

### 1. Controlling Law and Standard of Review

**{¶ 35}** A defendant asserting a claim of ineffective assistance of counsel must establish (1) counsel's performance was deficient or objectively unreasonable, as determined by " 'prevailing professional norms' " and (2) he was prejudiced by counsel's deficient performance. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 77, quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

**{¶ 36}** To show that trial counsel's performance was deficient or unreasonable, a defendant must overcome the presumption that counsel provided competent representation and must show counsel's actions were not trial strategies prompted by reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989).

{¶ 37} Prejudice results when " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bradley* at 142, quoting *Strickland* at 694. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694.

{¶ 38} When analyzing an ineffective assistance of counsel claim, an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* at 697. *See also State v. Wade*, 10th Dist. No. 20AP-456, 2021-Ohio-4090, ¶ 19. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Strickland* at 697.

{¶ 39} Mr. Clark raises several arguments under this assignment of error. First, he claims his attorney was ineffective for failing to object to the special prosecutor's dual role as both prosecutor and victim. Second, he asserts trial counsel was ineffective for consistently failing to object to certain testimony under the hearsay rules, the Best Evidence Rule, and the Confrontation Clause of the Sixth Amendment to the United States Constitution.

### 2. Whether the failure to object to the special prosecutor's role constituted ineffective assistance of counsel

{¶ 40} As we have already noted above under Mr. Clark's first assignment of error, the trial court did not err in permitting an attorney from the Columbus City Attorney's Office to serve as special prosecutor in this case. Therefore, even had Mr. Clark's trial counsel raised this issue below and objected to what he views as the dual role of the prosecutor, the objection would have been overruled. As such, we cannot say counsel's failure to raise the issue at trial constituted deficient performance. *See State v. Issa*, 93

Ohio St.3d 49, 68 (2001) ("Counsel is certainly not deficient for failing to raise a meritless issue.").

**3. Whether the failure to object under the hearsay rules, the Best Evidence Rule, and the Confrontation Clause constituted ineffective assistance of counsel**

{¶ 41} With respect to his hearsay, Confrontation Clause, and Best Evidence Rule claims, Mr. Clark takes issue with his trial counsel's failure to object throughout Detective Schiff's testimony when he described his discussions with four of the individuals listed as contributors in the August 2019 report and their statements denying having made monetary contributions to CCEI. (Appellant's Brief at 26-27.) Additionally, he takes issue with Detective Schiff's testimony about the contents of various bank records that were not produced at trial, information he learned from Regus about ProEnergy Ohio LLC's link to Mr. Clark, information he learned from emails between Ms. Ramsini's predecessor and Mr. Quinn, and the contents of an article that ran in the Columbus Dispatch. (Appellant's Brief at 27-29.) And he takes issue with the state's reliance on Ms. Ramsini's testimony about how the online filing database worked in 2019 without producing the actual database or images of the database for the jury to view. (Appellant's Brief at 29.)

{¶ 42} Because we cannot agree that Mr. Clark has demonstrated prejudice as to any of the alleged errors of trial counsel, we address that prong of *Strickland* first. *See Strickland* at 697; *Wade* at ¶ 19.

{¶ 43} Although Detective Schiff did testify about his conversations with four of the five individuals listed as contributors and that may have constituted impermissible hearsay testimony that might have implicated the Confrontation Clause, two of the listed contributors, themselves, testified at trial. Both Ms. Heard and Ms. Martinez testified that they did not contribute to CCEI. (Tr. Vol. III at 556-57, 573-75.) Additionally, even Mr.

Clark admitted on the witness stand that none of the five listed individuals contributed money to the campaign. (Tr. Vol. III at 633. *But see* Tr. Vol. III. At 656-57.) So, regardless of whether Detective Schiff's summary of his conversations constituted impermissible hearsay or implicated the Confrontation Clause, we cannot say Mr. Clark suffered any prejudice because the information necessary to convict him of fifth-degree felony election falsification (the falsity of at least one of his statements on a material matter) came directly from Ms. Heard, Ms. Martinez, and himself.

{¶ 44} Because the state presented overwhelming evidence regarding the falsity of statements in CCEI's August 2019, we also cannot say Mr. Clark was prejudiced by trial counsel's failure to object to Detective Schiff's description of bank records or other documents that were not produced at trial. Detective Schiff's testimony about the relevant bank records and other documents went to the falsity of the information contained in the August 2019 report. But because Mr. Clark, himself, admitted to filing campaign finance reports containing false statements about CCEI's number of contributions, amounts of each contribution, and identity of the individuals who he claimed contributed money to the campaign, even without bank account information, the state easily presented compelling, uncontroverted evidence that Mr. Clark made false statements about material matters in the report.

{¶ 45} As to Mr. Clark's Best Evidence Rule challenge regarding the state's failure to produce the actual database or images of the database to prove the presence of the election falsification attestation, we have already concluded that such evidence was not required to support his conviction. Ms. Ramsini's testimony about the database could not have been prejudicial because it went to something that is not an element of the offense.

**{¶ 46}** But even if the attestation was required by the statute, and therefore Ms. Ramsini's testimony was necessary to support the state's case as to one of the elements of the offense, Mr. Clark cannot show ineffective assistance of counsel. Pursuant to Ohio's Best Evidence Rule, as set forth in Evid.R. 1002, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." However, the original is not required if any of the following apply:

> (1) Originals lost or destroyed.
>
> All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bath faith; or
>
> (2) Original not obtainable.
>
> No original can be obtained by any available judicial process or procedure; or
>
> (3) Original in possession of opponent.
>
> At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be subject of proof at the hearing, and that party does not produce the original at the hearing; or
>
> (4) Collateral matters.
>
> The writing, recording, or photograph is not closely related to a controlling issue.

(Emphasis removed.) (Evid.R. 1004; *See also State v. Voltz*, 7th Dist. No. 21 JE 0020, 2022-Ohio-4351, ¶ 88.)

**{¶ 47}** The record below contains an email Ms. Ramsini sent in response to defense counsel's request for images of the 2019 version of the database. In her email, Ms. Ramsini explained that she could not produce the requested images because the "system does not give [her] the ability to take screenshots or images of previous versions of the site," including what it would have looked like for a user in 2019. (Ct.'s Ex. 2 at 1.) Therefore, the

trial court would have overruled any Best Evidence Rule objection to Ms. Ramsini's testimony under Evid.R. 1004(2). For that reason, we cannot say counsel's failure to raise the issue was prejudicial to Mr. Clark's defense.

{¶ 48} Because Mr. Clark cannot satisfy *Strickland*'s prejudice requirement, we need not consider whether his trial counsel provided deficient performance. *See Strickland*, 466 U.S. at 697; *Wade*, 2021-Ohio-4090 at ¶ 19. We therefore overrule his third assignment of error.

### D. Fourth Assignment of Error—Cumulative Error

{¶ 49} In his fourth and final assignment of error, Mr. Clark argues that even if we conclude none of the above alleged errors is sufficient to be individually prejudicial, the cumulative effect of these errors nonetheless resulted in Mr. Clark being denied a fair trial.

{¶ 50} Under the cumulative error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous errors does not individually constitute cause for reversal." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 169. "To affirm a conviction in spite of multiple errors, we must determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. The errors may be considered harmless if there is overwhelming evidence of guilt, if [the] [a]ppellant's substantial rights were not affected, or if there are other indicia that the errors did not contribute to the conviction." (Internal citation omitted.) *State v. Anderson*, 7th Dist. No. 03 MA 252, 2006-Ohio-4618, ¶ 80.

{¶ 51} As noted above, the state presented strong direct evidence of Mr. Clark's guilt. Even without Detective Schiff's testimony about his conversations with the five campaign volunteers and the various bank records, Ms. Ramsini's testimony about the database and its display of the election falsification attestation, the Columbus Dispatch article, the Regus

records, and Mr. Quinn's emails, the state presented overwhelming evidence of Mr. Clark's guilt. To convict Mr. Clark of election falsification under R.C. 3599.36, the state did not have to prove Mr. Clark acted with the intent to mislead or defraud or that he saw an election falsification attestation before he submitted the August 2019 report. The state had to prove only that Mr. Clark knew he made a false statement and the statement was one the Revised Code requires be made under penalty of election falsification. The state satisfied this burden with the August 2019 amended report, Mr. Clark's own testimony that he completed the report and knew the campaign did not have any monetary contributions from the listed individuals, and the testimony of Ms. Heard and Ms. Martinez that they did not make monetary contributions to the campaign. We therefore overrule Mr. Clark's fourth and final assignment of error.

## IV. CONCLUSION

{¶ 52} Having overruled Mr. Clark's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and BOGGS, JJ., concur.

———————————